Adam C. Anderson (Bar No. 024314)
ANDERSON BANTA CLARKSON PLLC
48 North Macdonald
Mesa, AZ 85201
480-272-5983
adam@abclawgroup.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| ANDREA HARRIS,<br><br>    Plaintiff,<br><br>v.<br><br>IQ DATA INTERNATIONAL, INC.,<br><br>    Defendant. | No.<br><br>COMPLAINT & TRIAL<br>BY JURY DEMAND |

  NOW COMES the Plaintiff, ANDREA HARRIS, by and through her attorneys, ANDERSON BANTA CLARKSON PLLC, and for her Complaint against the Defendant, IQ DATA INTERNATIONAL, INC., the Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

  1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

## II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III. PARTIES

4. ANDREA HARRIS, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Eloy, County of Pinal, State of Arizona.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Broadstone Indigo Apartments (NV) and Sure Deposit (hereinafter, "the Debt").

6. The debt that Plaintiff allegedly owed Broadstone Indigo Apartments (NV) and Sure Deposit was for residential apartment lease and/or security deposit, and was therefore, a debt incurred for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. IQ DATA INTERNATIONAL, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Arizona. Defendant is incorporated in the State of Washington.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. ALLEGATIONS

14. On or about December 26, 2013, Plaintiff reviewed her credit report and observed that the Debt was being reported by Defendant to the credit reporting agencies, as that term is defined by §1681a(f) of the Fair Credit Reporting Act, (hereinafter, FCRA). 15 U.S.C. §1681 *et seq.*

15. Upon noting that the Debt was being reported by Defendant to the credit reporting agencies, Plaintiff initiated a telephone call to Defendant to ascertain the status of, and amount outstanding on, the Debt.

16. Plaintiff spoke with a duly authorized representative of Defendant who identified herself as Lacey.

17. Plaintiff explained to Defendant that she was attempting to purchase a house and that the reporting of the Debt by Defendant was going to be an impediment to her attempts to obtain financing.

18. A discussion ensued about the Debt, such that Defendant informed Plaintiff that if she wanted to purchase a house, she needed to pay Defendant for the Debt.

19. The aforementioned representation had the effect of conveying to an unsophisticated consumer that if Plaintiff paid the Debt, Defendant would discontinue reporting the Debt to the credit reporting agencies and that the Debt would no longer appear on Plaintiff's credit report.

20. The aforementioned representation was false, deceptive and/or misleading as even if Plaintiff paid the Debt in full, Defendant still reports paid debts, such as the Debt, to the credit reporting agencies such that the Debt would continue to appear on Plaintiff's credit report.

21. During the course of the aforesaid communication between Defendant and Plaintiff, Defendant further informed Plaintiff that if she did not pay the Debt within thirty (30) days, the Debt would increase by $1,000.

22. The aforesaid representation had the effect of conveying to an unsophisticated consumer that additional charges and interest would accrue on the Debt in the amount of $1,000 in the thirty (30) days following the telephone call between the parties.

23. The aforesaid representation was false, deceptive and/or misleading given that additional charges and/or interest was not accruing on the Debt such that the balance on the Debt would increase by $1,000 in the thirty (30) days following the telephone call between the parties.

24. During the course of the aforesaid communication between Defendant and Plaintiff, Defendant further stated that if Plaintiff did not pay the Debt within thirty (30) days, her "credit will be ruined forever."

25. Fearing that her credit report would be permanently damaged, Plaintiff agreed to provide payment against the Debt and she provided Defendant with her credit card number.

26. On or about, December 27, 2013, the day following the telephone call as delineated above, Plaintiff contacted Defendant by telephone and spoke to another duly authorized representative of Defendant.

27. Plaintiff explained to Defendant that she had insufficient funds on her credit card and that she had felt coerced into providing her credit card details to Lacey. Plaintiff further informed Defendant that it did not have her authorization to charge any amount to her credit card.

28. Defendant responded to Plaintiff's request to cancel the payment by stating that Plaintiff will "never get a home" as Defendant would never take the Debt off of her credit report if she did not pay the Debt.

29. During the course of the aforesaid telephone call, Defendant further stated that Plaintiff's failure to pay the Debt would result in the Debt being permanently reported to the credit reporting agencies.

30. Defendant stated that this was Plaintiff's last chance to have the Debt removed from her credit report and then intentionally disconnected the call.

31. Defendant's statement, as delineated above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not pay the Debt, then the debt would remain on Plaintiff's credit report indefinitely.

32. Based on Defendant's representations as delineated above, Plaintiff believed that if she did not pay the Debt, it would remain on her credit report indefinitely.

33. Defendant's statement, as delineated above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not pay the Debt, the non-payment of said debt would have permanent, detrimental effect on Plaintiff's credit score.

34. Based on Defendant's representations as delineated above, Plaintiff believed that if she did not pay the Debt, the non-payment of said debt would have a permanent, detrimental effect on her credit score.

35. Defendant's statement, as delineated above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not pay the Debt, then she would have considerable difficulty obtaining new credit.

36. Defendant's statement, as delineated above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not pay the Debt, then it would be impossible for them to obtain new credit.

37. Based on Defendant's representations as delineated above, Plaintiff believed that if she did not pay the Debt, the non-payment of said debt would result in an inability to obtain new credit.

38. Pursuant to 15 U.S.C. §1681s-2(a)(5)(A), as a furnisher of information to the credit reporting agencies, Defendant must notify said credit reporting agencies of the date of delinquency on the account, which "shall be the month and year of the

commencement of the delinquency on the account that immediately preceded the action." *Id.*

39. Upon information and belief, the date of delinquency relative to the Debt was August 2009.

40. The obligation of a data furnisher to report the date of delinquency on an account serves to ensure that delinquent accounts do not remain on a consumer's credit report for an indefinite period of time.

41. Pursuant to 15 U.S.C. § 1681c(a)(4), a consumer reporting agency is precluded from making a consumer report containing "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."

42. Pursuant to 15 U.S.C. § 1681c(b), the following debts are exempted from the seven (7) year limitation period for the reporting of accounts placed for collection or charged to profit and loss that antedate the report by more than seven (7) years:

   i. A credit transaction involving, or which may reasonably be expected to involve, a principal amount of $150,000 or more;

   ii. The underwriting of life insurance involving, or which reasonably be expected to involve, a face amount of $150,000 or more; or

   iii. The employment of any individual at an annual salary which equals, or may reasonably be expected to equal $75,000, or more.

43. The debt on which Defendant was attempting to collect from Plaintiff was for a credit transaction for less than a principal amount of $150,000.

44. The debt on which Defendant was attempting to collect from Plaintiff was not relative to a life insurance policy.

45. The debt on which Defendant was attempting to collect from Plaintiff was not relative to employment.

46. The debt on which Defendant was attempting to collect from Plaintiff was not a debt that falls within any of the aforementioned categories such that it would be exempted from the seven (7) year limitation period for the reporting of accounts placed

for collection or charged to profit and loss that antedate the report by more than seven (7) years.

47. Defendant's representations, that the Debt would permanently appear on Plaintiff's credit report, representations that are delineated in greater detail above, were false, deceptive, and/or misleading given that:

    a. Defendant is required by statute to report the date of delinquency on the Debt, and

    b. A delinquent account, such as the Debt, cannot be reported by any credit reporting agency for more than seven (7) years after the date of delinquency.

48. Defendant's representations, as delineated above, misrepresented the character, amount, and/or legal status of the Debt as Defendant implied that the Debt would permanently appear on Plaintiff's credit report and would have a permanent detrimental affect on Plaintiff's credit score when in fact, the consumer reporting agencies would be precluded from reporting said debt for a period greater than seven (7) years after the date of delinquency pursuant to §1681c(a)(4) of the FCRA.

49. Defendant's representations, as delineated above, were unfair and unconscionable as the threat that the Debt would be permanently reported by the consumer reporting agencies was a hollow threat made only to intimidate Plaintiff into making payment against said debt.

50. Defendant's representation, as delineated above, were statements made, the natural consequence of which was to harass and/or abuse the Plaintiff.

51. At the time Defendant made the representations regarding the permanent reporting of the Debt to the consumer reporting agencies, Defendant had neither the intent nor the authority to have the credit reporting agencies indefinitely report the Debt.

52. In its attempts to collect the debt allegedly owed by Plaintiff to Broadstone Indigo Apartments (NV) and Sure Deposit, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

c. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

d. Communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. §1692e(8);

e. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

f. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

g. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

53. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.   JURY DEMAND

54. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ANDREA HARRIS, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

  a. All actual compensatory damages suffered;

  b. Statutory damages of $1,000.00;

  c. Plaintiff's attorneys' fees and costs;

  d. Any other relief deemed appropriate by this Honorable Court.

Respectfully Submitted,

**By:**  s/ Adam C. Anderson
   **Adam C. Anderson**
   **Attorney for Plaintiff,**
   **ANDREA HARRIS**

**March 5, 2014**

**Adam C. Anderson (Bar No. 024314)**
**ANDERSON BANTA CLARKSON PLLC**
**48 North Macdonald**
**Mesa, AZ 85201**
**480-272-5983**
**adam@abclawgroup.com**
**Attorney for Plaintiff**